UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY METZLER,

                    Plaintiff,

    v.

KENMORE-TOWN OF TONAWANDA UNION
FREE SCHOOL DISTRICT,

                    Defendant.

**DECISION AND ORDER**
22-CV-959S

## I.     INTRODUCTION

In this action, Plaintiff Mary Metzler alleges that her employer, Defendant Kenmore-Town of Tonawanda Union Free School District ("the District"), discriminated and retaliated against her based on disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, et seq., and the New York Human Rights Law ("NY HRL").  She further alleges under 42 U.S.C. § 1983 that the District deprived her of due process.

Now pending is the District's motion to dismiss Metzler's complaint pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure.[1]  (Docket No. 6.)  For the reasons set forth below, the motion is granted in part and denied in part, and Metzler is granted leave to replead consistent with the following decision.

---

[1] In support of its motion, the District filed a memorandum of law (with exhibit) and a reply memorandum of law.  (Docket Nos. 6-1, 6-2, 11.)  Metzler filed a memorandum of law in opposition.  (Docket No. 10.)

## II.    BACKGROUND

This Court assumes the truth of the following factual allegations contained in the complaint.  See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Mary Metzler is a female over the age of 40 who worked for the District as a Senior Clerk, Main Registration.  Complaint, Docket No. 1, ¶¶ 8-10.  She has been diagnosed with "neurovascular and neuromuscular problems including rheumatoid arthritis, Sjogren's syndrome, erythromelalgia and atrial fibrillation" and claims to be disabled under the ADA.  Id. ¶¶ 11, 22, 23.

In July 2020, Metzler asked the District to accommodate her disabilities by allowing her to work from home.  Id. ¶¶ 12, 13, 24, 45.  The District granted Metzler's request and allowed her to work from home until August 2021.  Id. ¶¶ 14, 17, 27, 46.  During that time, Metzler successfully completed the essential functions of her job.  Id. ¶ 26.  But on August 25, 2021, the District informed Metzler that her request to work from home would no longer be accommodated.  Id. ¶¶ 17, 27, 50.  The District made this decision unilaterally and without a hearing.  Id. ¶¶ 17, 18, 27, 50, 52.  Metzler took a medical leave the next day due to the severe deterioration of her medical conditions.  Id. ¶ 19.

Two months later, on October 26, 2021, Metzler filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("the EEOC Charge or Charge").  Id. ¶ 6.[2]  Metzler marked the box on the Charge form indicating that she was

---

[2] A copy of the EEOC Charge is contained in the record at Docket No. 6-2.  Although not attached to the complaint, the Charge is properly considered because it is fully incorporated into the complaint by clear and

complaining of discrimination based on "disability" and explained that the District withdrew her reasonable accommodation.  EEOC Charge, Docket No. 6-2.

Metzler told her direct supervisor that she filed the Charge with the EEOC. Complaint, ¶ 33.  This supervisor previously twice told Metzler that he would write her a job recommendation.  Id. ¶ 34.  But after learning that Metzler filed the Charge, the supervisor told her that he would no longer write her a job recommendation.[3]  Id. ¶ 35.

On September 23, 2022, the EEOC issued Metzler a Determination and Notice of Right to Sue.  Complaint, ¶ 7.  Metzler thereafter commenced this action on December 9, 2022.

---

substantial reference.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (stating that "[t]o be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents")(internal quotation and citation omitted); Holowecki v. Fed. Express Corp., 440 F.3d 558, 565 (2d Cir. 2006) (finding that on a motion to dismiss "it is proper for [a] court to consider the plaintiff's relevant filings with the EEOC"); Felton v. Monroe Cmty. Coll., 579 F. Supp. 3d 400, 407 n.1 (W.D.N.Y. 2022) (finding it permissible to consider EEOC Charge that was not attached to the complaint on the basis that the plaintiff specifically referenced and relied on the Charge in his complaint and therefore incorporated it by reference).

[3] Metzler's allegations concerning this alleged retaliatory act are inconsistent.  She alleges that she filed her EEOC Charge, told her direct supervisor about the filing, and was then informed that her direct supervisor would no longer write her a job recommendation.  Id. ¶¶ 32-35.  But Metzler also alleges that her supervisor informed her of his unwillingness to write her a recommendation on September 2, 2021, which is 54 days before Metzler filed her Charge with the EEOC on October 26, 2021.  Complaint, ¶ 35; EEOC Charge, Docket No. 6-2.  If that is true, Metzler's direct supervisor could not have acted in response to the filing of the Charge.

Construing the complaint liberally and resolving ambiguities in Metzler's favor as required, see ATSI Commc'ns, 493 F.3d at 98, this Court assumes that the September 2, 2021 allegation is a scrivener's error because (1) the complaint is otherwise presented in chronological order, (2) Metzler unequivocally pleads that "[she] informed her direct supervisor that she filed the complaint with the EEOC," (3) Metzler was on medical leave after the October filing of the EEOC Charge and could have been in contact with her direct supervisor, and (4) under the circumstances, it is more likely that the date is wrong than the specific allegations of retaliation.  This Court therefore construes the complaint as alleging that Metzler's direct supervisor withheld his willingness to write a job recommendation after learning that Metzler filed her EEOC Charge.

### III.   DISCUSSION

Metzler asserts three causes of action.   First, she claims both failure-to-accommodate discrimination and retaliation in violation of the ADA.  Complaint, ¶¶ 20-36. Second, she asserts those same two claims under the NY HRL.  Id. ¶¶ 37-40.  Third, she alleges under 42 U.S.C. § 1983 that the District deprived her of her property interests in the terms and conditions of her employment without due process of law.  Id. ¶¶ 41-54.

The District moves to dismiss Metzler's complaint for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12 (b)(6).  Metzler opposes the motion.

### A.    Rule 12 (b)(6) Standard[4]

Rule 12 (b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P. 8 (a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 554, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 555).  "Labels and conclusions" or "a formulaic

---

[4] At the outset, this Court notes that Metzler devotes more than half of her 11-page memorandum in opposition to advocating for the application of a "fair notice" standard to the sufficiency of her complaint. See Memorandum of Law, Docket No. 10, pp. 2-8.  If by making this argument Metzler seeks review under a lesser Rule 12 (b)(6) standard than the one articulated herein, her request is denied because the "fair notice" standard she presents is inconsistent with Supreme Court and Second Circuit precedent.  See Sayers v. Niagara Falls City Sch. Dist., 20-CV-703-LJV-JJM, 2024 WL 356569, at *2 (W.D.N.Y. Jan. 31, 2024) (rejecting the same "fair notice" arguments brought by Metzler's lawyers in another case); see also Mandala v. NTT Data, Inc., 975 F.3d 202, 208 (2d Cir. 2020).

recitation of the elements of a cause of action" also will not do.  Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570); id. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").  Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged.  Iqbal, 556 U.S. at 678.  Plausibility requires finding "more than a sheer possibility that a defendant has acted unlawfully," id., but it is not a probability requirement, Twombly, 550 U.S. at 570.  The well-pleaded allegations in the complaint need only nudge the claim "across the line from conceivable to plausible."  Id.

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Iqbal, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  "While legal conclusions can provide the framework of a complaint, they must be supported by factual

allegations." Id. at 662; id. at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").

A two-pronged approach is thus used to examine the sufficiency of a complaint. This examination is context specific and requires the court to draw on its judicial experience and common sense. See Iqbal, 556 U.S. at 679. First, statements that are not entitled to the presumption of truth, such as conclusory allegations, labels, and factually unsupported legal conclusions, are identified and stripped away. See id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

In considering a motion to dismiss under Rule 12 (b)(6), "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated into the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Isr. Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). "[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect," thereby rendering the document "integral to the complaint." Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002)). But even where a document is "integral" to the complaint, it cannot serve as the basis for

dismissal unless there is no dispute as to its authenticity, accuracy, and relevance.  See Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (internal citations omitted).

**B.    ADA Claims**

**1.  Failure-to-accommodate**

The District argues that Metzler fails to state a failure-to-accommodate claim because she does not plead facts sufficient to establish a plausible claim for relief. Metzler responds that her complaint adequately puts the District on notice of her claim.

The ADA requires a covered employer to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability unless doing so would impose an undue hardship on the covered employer. See 42 U.S.C. § 12112 (b)(5)(A).  To state a failure-to-accommodate claim, a plaintiff must allege "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  Clark v. Jewish Childcare Ass'n, Inc., 96 F. Supp. 3d 237, 250 (S.D.N.Y. 2015) (quoting McMillan v. City of New York, 711 F.3d 120, 125-26 (2d Cir. 2013)); Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 184 (2d Cir. 2006).

The District argues that Metzler fails to sufficiently plead the first element—that she is a person with a disability under the ADA.  The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual . . . a record of such an impairment; or . . . being regarded as having such

an impairment."  42 U.S.C. § 12102 (1); <u>Langella v. Mahopac Cent. Sch. Dist.</u>, No. 18-CV-10023 (NSR), 2023 WL 2529780, at *3 (S.D.N.Y. Mar. 15, 2023) ("Under the ADA, a qualifying disability must limit a major life activity and the limitation must be substantial.") (quotation marks and citation omitted).

A non-exhaustive list of "major life activities" is contained in the ADA.  <u>See</u> 42 U.S.C. § 12102 (2).  It includes, *inter alia*, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  <u>Id.</u>  In determining whether a major life activity is substantially limited by a physical or mental impairment, courts consider (1) the nature and severity of the impairment, (2) its duration or expected duration; and (3) the existence of any actual or expected permanent or long term impact.  <u>Capobianco v. City of New York</u>, 422 F.3d 47, 57 (2d Cir. 2005); <u>O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester</u>, No. 18-CV-8502 (KMK), 2020 WL 1244474, at *12 (S.D.N.Y. Mar. 16, 2020).

To survive a motion to dismiss, "a plaintiff [must] do more than simply allude to her impairments in her pleadings; she must plead how those impairments significantly impacted major life activities."  <u>Bailey-Lynch v. Dollar Tree Stores, Inc.</u>, 20-CV-01610 JLS-MJR, 2022 WL 20741772, at *8 (W.D.N.Y. Oct. 27, 2022) (Report and Recommendation), <u>adopted by</u>, 2023 WL 6057427 (W.D.N.Y. Sept. 18, 2023) (alteration in original; quotation and citation omitted).  Metzler fails to do so here.

Metzler's allegation that she "has a disability under the ADA," <u>see</u> Complaint, ¶¶ 11, 22, is a factually unsupported legal conclusion not entitled to the presumption of

truthfulness.  See Iqbal, 556 U.S. at 678.  And while Metzler lists her various diagnoses, see Complaint, ¶ 23, she alleges no facts whatsoever concerning how her medical conditions substantially limit her major life activities.  She thus fails to state a claim.  See Lewis v. R.L. Vallee, Inc., 8:24-CV-69 (AMN/DJS), 2024 WL 1739608, at *3 (N.D.N.Y. Apr. 23, 2024) (dismissing claim where "Plaintiff does not allege that his ADHD, PTSD, or alcohol abuse disorder have 'substantially limited' a major life activity"); Dechberry v. N.Y.C. Fire Dep't, 124 F. Supp. 3d 131, 151 (E.D.N.Y. 2015) ("Without any factual specificity as to the alleged disability claimed and the major life activities affected, the Complaint fails to plead that plaintiff was disabled."); Cullen v. Verizon Commc'ns, No. 14-CV-464S, 2014 WL 6627494, *3-4 (W.D.N.Y. Nov. 21, 2014) (dismissing failure-to-accommodate claim where the plaintiff failed to plead any facts concerning how his alleged alcoholism limited his life activities).

The District further argues that Metzler fails to sufficiently allege the third element—that, with reasonable accommodation, she could perform the essential functions of her job.  This Court agrees.  Metzler alleges only that she was employed as a "Senior Clerk, Main Registration" and that she "successfully completed the essential functions of her job" while working from home.  Complaint, ¶¶ 10, 26.  This is insufficient. See Dominguez v. Bd. of Educ. of the Yonkers City Sch. Dist., No. 23 Civ. 2460 (NSR), 2024 WL 3427217, at *6 (S.D.N.Y. July 16, 2024) ("that Plaintiff could perform his essential job functions while working remotely during the first phase of the COVID-19 pandemic—when leaders, officials, and institutions were in lockdown and just beginning

to understand the nature of the outbreak—does not support his assertion that he could continue to perform his essential job functions months or even a year thereafter").

Nowhere does Metzler allege the requirements of her job, her essential duties, or how she could perform the essential duties from home.  And other than the conclusory allegation that her request to work from home was reasonable because the District allowed it for more than a year, see Complaint, ¶ 25, Metzler alleges no facts to support her contention that such an accommodation was reasonable.  She thus fails to state a claim for this reason as well.

Finally, Metzler's "fair notice" arguments, rejected *supra* at n. 4, neither directly address the District's specific arguments nor persuasively save her deficient pleading.

Consequently, this Court finds that Metzler's ADA failure-to-accommodate claim must be dismissed for failure to state a claim upon which relief can be granted.  See Scarville v. Living Res. Corp., 1:21-CV-807 (GTS/CFH), 2022 WL 4365863 (N.D.N.Y. Sept. 21, 2022) (dismissing ADA failure-to-accommodate claim for similar pleading deficiencies).  The District's motion to dismiss is therefore granted as to this claim.

### 2.  Retaliation

#### (a) Exhaustion of administrative remedies

The District first argues that Metzler's ADA retaliation claim must be dismissed because she failed to exhaust her administrative remedies and the claim is not reasonably related to her failure-to-accommodate claim.  Metzler argues that her retaliation claim is encompassed in her overriding claim of discrimination against the District.

A plaintiff seeking to bring an ADA claim must ordinarily exhaust administrative remedies through the EEOC or an equivalent state agency. <u>Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.</u>, 882 F.3d 52, 57 (2d Cir. 2018). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." <u>Brown v. Coach Stores, Inc.</u>, 163 F.3d 706, 712 (2d Cir. 1998). Failure to exhaust administrative remedies constitutes a failure to state a claim under Rule 12 (b)(6). <u>See</u> <u>McInerney v. Rensselaer Polytechnic Inst.</u>, 505 F.3d 135, 138 (2d Cir. 2007); <u>Telemaque v. Marriott Int'l, Inc.</u>, No. 14-CV-6336 (ER), 2016 WL 406384, at *5 (S.D.N.Y. Feb. 2, 2016).

Here, it is plain on the face of the EEOC Charge that Metzler failed to assert a retaliation claim. <u>See</u> EEOC Charge, Docket No. 6-2. She neither marked the "retaliation" box as a basis of discrimination nor asserted any facts related to retaliation in the short narrative describing her claim. <u>Id.</u> Metzler appears to concede this point,[5] but maintains that she nevertheless presented this claim to the EEOC because "[r]etaliation *is* discrimination" and therefore marking the "discrimination" box necessarily included a retaliation claim. Memorandum of Law, Docket No. 10, p. 8 (emphasis in original). Construing this argument broadly, this Court understands Metzler's position to be that she exhausted her administrative remedies as to her retaliation claim because that claim is reasonably related to her failure-to-accommodate claim. This Court agrees in part.

Claims not included in an administrative complaint may nonetheless be pursued if they are "reasonably related" to other filed claims. <u>See</u> <u>Littlejohn v. City of New York</u>, 795

---

[5] <u>See</u> Memorandum of Law, Docket No. 10, p. 8 ("Defendant argues that a lay person should have a retaliation cause of action dismissed because she didn't check the appropriate box at the EEOC.").

F.3d 297, 322 (2d Cir. 2015) ("claims not raised in an EEOC complaint may still be part of the complaint later filed in federal court if they are 'reasonably related' to the claim filed with the agency"); Shah v. N.Y. State Dep't of Civil Serv., 168 F.3d 610, 614 (2d Cir. 1999).  "Subsequent conduct is reasonably related to conduct in an EEOC charge if: [1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."  Alfano v. Costello, 294 F.3d 365, 381 (2d Cir. 2002); see also Kirkland-Hudson v. Mount Vernon City Sch. Dist., 665 F. Supp. 3d 412, 438 (S.D.N.Y. 2023) (quoting Alfano).

As to the first category, "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."  Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001) (internal quotation marks and citation omitted).  "The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases."  Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (internal quotation marks and citation omitted).

Review of Metzler's Charge reveals that it fails to provide notice to the EEOC to investigate any retaliation claim arising before the filing of the Charge.  As mentioned, Metzler did not mark the "retaliation" box as a basis for her discrimination claim.  See EEOC Charge, Docket No. 6-2.  Her narrative describing her claim also provides no facts suggesting discrimination based on retaliation.  That narrative in toto reads as follows:

12

> I am employed by the above-named Respondent as a Senior Clerk Main Registration.  In July 2020, I submitted a request for reasonable accommodation and it was granted.  On or about August 25, 2021, I was told my accommodation request could no longer be accommodated.  On or about August 26, 2021, I went out on medical leave.
>
> I believe I have been discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

Id.

Nothing in this narrative put the EEOC on notice to investigate discrimination based on retaliation.  See Williams, 458 F.3d at 70.  Thus, to the extent Metzler alleges any retaliation claims based on pre-Charge conduct, those claims are not reasonably related to the discrimination claim in the Charge under the first Alfano category.  Dismissal of those claims under Rule 12 (b)(6) for failure to exhaust administrative remedies is therefore required.  See McInerney, 505 F.3d at 138.

But under the second Alfano category, this Court finds that Metzler's claim that her direct supervisor retaliated against her for filing an EEOC charge, see fn. 3 *supra*, is reasonably related to the discrimination claim in her EEOC Charge.  See Alfano, 294 F.3d at 381 (finding that subsequent conduct is reasonably related to conduct in an EEOC charge if it alleges retaliation for filing the EEOC charge).  This claim may therefore proceed to discovery.[6]

Accordingly, the District's motion to dismiss for failure to exhaust administrative remedies is granted in part and denied in part.

---

[6] If discovery reveals that Metzler's direct supervisor did in fact inform her that he would not write her a job recommendation before she filed her EEOC Charge, see Complaint, ¶ 35, then this claim would be subject to dismissal as unexhausted.

13

### (b) Failure to state a claim

The District next maintains that Metzler's retaliation allegations are insufficient to state a claim.  Metzler contends that her complaint provides ample notice of her claim.

The ADA prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203 (a).  To survive a motion to dismiss, a plaintiff asserting a retaliation claim under the ADA must plausibly allege that "[1] [the] plaintiff was engaged in protected activity; [2] the alleged retaliator knew that plaintiff was involved in protected activity; [3] an adverse decision or course of action was taken against plaintiff; and [4] a causal connection exists between the protected activity and the adverse action."  Natofsky v. City of New York, 921 F.3d 337, 353 (2d Cir. 2019) (citation omitted).

The District argues that Metzler's ADA retaliation claim should be dismissed because she failed to sufficiently allege that she is disabled within the meaning of the ADA.  But such an allegation is not required to state a retaliation claim.  "Unlike the requirements for a standard disability-based discrimination claim, a plaintiff pursuing a retaliation claim need not allege that he or she was actually 'disabled' within the meaning of the ADA."  Vale v. Great Neck Water Pollution Control Dist., 80 F. Supp. 3d 426, 439 (E.D.N.Y. 2015) (citing Stephan v. W. Irondequoit Cent. Sch. Dist., 769 F. Supp. 2d 104, 108 (W.D.N.Y. 2010)); Sherman v. Cnty. of Suffolk, 71 F. Supp. 3d 332, 352 (E.D.N.Y.

2014) (same); see also Frantti v. New York, 414 F. Supp. 3d 257, 290 (N.D.N.Y. 2019) (noting that ADA discrimination and retaliation claims are analyzed differently).

Accordingly, the District's motion to dismiss Metzler's ADA retaliation claim for failure to state a claim upon which relief can be granted is denied.

## C.    NY HRL Claims

The District argues that Metzler's failure-to-accommodate and retaliation claims under the NY HRL should be dismissed because she failed to bring them within the 1-year statute of limitations set forth in NY Education Law § 3813 (2-b) and because she failed to serve a Notice of Claim as required by NY Education Law § 3813 (1).  Metzler does not respond to these arguments at all.  The NY HRL claims are therefore deemed abandoned and will thus be dismissed.  See Malik v. City of New York, 841 F. App'x 281, 284 (2d Cir. Jan. 11, 2021) ("But when a party fails adequately to present arguments in a brief, a court may properly consider those arguments abandoned, especially in the case of a counseled party where a court may infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.") (quotation marks and citations omitted); Guadagna v. Zucker, CV 17-3397 (SJF)(AKT), 2021 WL 11645538, at *21 (E.D.N.Y. Mar. 19, 2021); Williams v. Suffolk Cnty., 284 F. Supp. 3d 275, 284 (E.D.N.Y. 2018) (collecting cases).

## D.    Due Process Claim

Metzler alleges a procedural due process claim under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.[7]   In particular, she alleges that her work-from-home

---

[7] This Court does not read Metzler's complaint as alleging a substantive due process claim.  To do so, a plaintiff must allege (1) a valid property interest or fundamental right; and (2) that the defendant infringed

accommodation became a term and condition of her employment, and that the District deprived her of that property interest without a pre-deprivation hearing.  See Complaint, ¶¶ 44-53.  The District seeks dismissal of this claim for pleading insufficiencies.  Metzler contends that her pleading is sufficient.

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  To properly plead a cause of action under § 1983, a plaintiff's complaint must include allegations that the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Whalen v. Cnty. of Fulton, 126 F.3d 400, 405 (2d Cir. 1997); Hubbard v. J.C. Penney Dep't Store, 05-CV-6042, 2005 WL 1490304, at *1 (W.D.N.Y. June 14, 2005).

The Fourteenth Amendment Due Process Clause provides that "No State shall deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  As relevant here, "[a] procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process."  Reed v. Goertz, 598 U.S. 230, 236, 143 S. Ct. 955,

---

on that right by conduct that shocks the conscience or suggests a gross abuse of governmental authority. See King v. N.Y.C. Emps. Ret. Sys., 212 F. Supp. 3d 371, 401 (E.D.N.Y. 2016).  Metzler alleges no such conduct.  She alleges only that the District deprived her of her property interests in continuing to work from home as a term and condition of her employment without a pre-deprivation hearing.  At most, she alleges that the District acted improperly and contrary to law in discontinuing her accommodation, but that does not suffice to sustain a substantive due process claim.  See Bishop v. Wood, 426 U.S. 341, 350, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976) (explaining that the Fourteenth Amendment does not protect against government action that is merely incorrect or ill-advised).  Consequently, to the extent a substantive due process claim could be read into the complaint, it must be dismissed for failure to state a claim upon which relief can be granted.

215 L. Ed. 2d 218 (2023) (citation omitted).  Accordingly, "[t]o state a claim under Section 1983 for the denial of procedural due process, a plaintiff must allege both the existence of a protected property or liberty interest, and that he or she was deprived of that interest without being afforded sufficient process."  <u>A.S. v. City Sch. Dist. of Albany</u>, 585 F. Supp. 3d 246, 279 (N.D.N.Y. 2022) (citing <u>Bryant v. N.Y. Educ. Dep't</u>, 692 F.3d 202, 28 (2d Cir. 2012)).

"Property interests are not created by the Constitution; rather, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state-law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" <u>Ciambriello v. Cnty. of Nassau</u>, 292 F.3d 307, 313 (2d Cir. 2002) (quoting <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972)).  And while "[p]ublic employees have property interests in their employment against acts of termination, suspension without pay, and diminution in rank," they hold no such interests in their working conditions and assignments absent reduction in compensation.  <u>Wilkinson v. N.Y. State</u>, 2:18-CV-4148 (PKC) (LB), 2019 WL 5423573, at *16 (E.D.N.Y. Oct. 22, 2019) (citing <u>Barnes v. Pilgrim Psychiatric Ctr.</u>, 860 F. Supp. 2d 194, 203 (E.D.N.Y. 2012)).

Here, Metzler does not allege that she was terminated, suspended, or demoted.  Nor does she allege any reduction in compensation.  This is fatal to her claim.  <u>See Ramberran v. Dellacona</u>, No. 07-CV-304 (CBA), 2008 WL 905217, at *4 (E.D.N.Y. Mar. 31, 2008) ("An employee who continues to be paid by his employer cannot sustain a claim for deprivation of property without due process.") (citing <u>O'Connor v. Pierson</u>, 426 F.3d

187, 199 (2d Cir. 2005) (observing that "no court has held that an employee on fully paid leave has been deprived of a property right merely by virtue of being relieved of his job duties")).

Instead, Metzler's claim rests on her allegation that she possesses a protected property interest in her work-from-home accommodation because it became a term and condition of her employment.  Complaint, ¶¶ 15, 16, 44, 48, 49.  Along with her allegations being wholly conclusory and factually unsupported, Metzler does not identify any state law or independent source to support this alleged entitlement.  See Roth, 408 U.S. at 577 (noting that to establish a property interest, "a person clearly must have more than an abstract need or desire for it;" instead, he must "have a legitimate claim of entitlement to it.").  What Metzler alleges is akin to a change in her working conditions or assignment, which is not protected by the Fourteenth Amendment absent a reduction in compensation, which she does not allege.  See Wilkinson, 2019 WL 5423573, at *16; Harris v. Bd. of Educ. of the City Sch. Dist. of the City of New York, 230 F. Supp. 3d 88, 107-108 (E.D.N.Y. 2017) ("as courts in this circuit have recognized, even if a plaintiff has a property interest in continued employment, termination or a change in the employee's duties does not violate due process if the employee continues to be paid the same amount as she received before the change").   The complaint is therefore deficient as to the first element.

Metzler's allegations as to the second element—that she was deprived of her property interest without being afforded sufficient process—are also deficient.  "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims

18

based on random, unauthorized acts by state employees." Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996). When the claim is based on the latter, "the 'due process' required by the [F]ourteenth [A]mendment is satisfied by the availability at the state level of an adequate post-deprivation hearing." Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev., 959 F.2d 395, 404 (2d Cir. 1992). In New York, "an Article 78 proceeding is a perfectly adequate postdeprivation remedy." Hellenic Am. Neighborhood, 101 F.3d at 881. Consequently, "where a plaintiff alleges he was deprived of a protected interest due to a random, unauthorized act by a state employee, he must pursue his claim through an Article 78 proceeding." Morgan v. United Fed. of Tchrs., 1:23-cv-00697 (LAK)(SDA), 2023 WL 4238123, at *5 (S.D.N.Y. June 7, 2023) (Report and Recommendation), adopted by, 2023 WL 4239076 (S.D.N.Y. June 28, 2023).

Here, Metzler does not allege that her work-from-home accommodation was discontinue due to an established state procedure or policy. She simply alleges that an unidentified employee of the District "unilaterally told [her] that her accommodation request would no longer be accommodated." Complaint, ¶¶ 17, 50. Because Metzler could have challenged this decision through an Article 78 proceeding, her procedural due process claim fails. See Horton v. Westling, 284 F. Supp. 3d 213, 220 (N.D.N.Y. 2018) ("the availability of an adequate, post-deprivation hearing will preclude a procedural due process claim").

Finally, the District argues that Metzler fails to adequately plead a Monell claim— that a municipal custom or policy caused her constitutional deprivations. Metzler argues that the denial of her accommodation "was an express official act by [the District]," which

this Court assumes is an attempt to defend a <u>Monell</u> claim.  Memorandum of Law, Docket No. 10, p. 10.

Section 1983 imposes liability on municipalities and municipal entities such as school districts whose official custom or policy causes an employee to violate an individual's constitutional rights.  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Municipal liability cannot be premised solely on a *respondeat superior* theory, but must be based on constitutional deprivations caused by an officially promulgated, or *de facto*, governmental "custom" or "policy[.]"  <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).  Thus, a municipality will be liable for a § 1983 violation only where the municipality itself was the "moving force" behind the deprivation of a plaintiff's federal rights.  <u>See</u> <u>Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown</u>, 520 U.S. 397, 400, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).  That is, "a municipality will not be held liable solely because it employs a tortfeasor."  <u>Bisignano v. Harrison Cent. Sch. Dist.</u>, 113 F. Supp. 2d 591, 601 (S.D.N.Y. 2000).  Consequently, "to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must establish that the violation of his constitutional rights resulted from a municipal custom or policy."  <u>Vann v. City of New York</u>, 72 F.3d 1040, 1049 (2d Cir. 1995).

As such, to adequately state a claim for municipal liability, a plaintiff must plead the existence of an official policy or custom that caused the denial of a constitutional right. <u>See</u> <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995).  The existence of a municipal policy or custom can be demonstrated in several ways, including: (1) showing

an officially promulgated and endorsed municipal policy, Monell, 436 U.S. at 658; (2) showing that actions taken by officials with final policymaking authority caused a constitutional violation, Pembaur, 475 U.S. at 480–81; (3) showing that municipal decision-making evidences "deliberate indifference" to the rights of those with whom municipal employees come in contact, including failure to remedy an otherwise constitutional policy so deficient and widespread that policymakers knew or should have known with a high degree of certainty that constitutional violations could result, City of Oklahoma City v. Tuttle, 471 U.S. 808, 819, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985), or (4) failure to train employees when training is necessary to prevent the violation of federal rights, City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). When the existence of a municipal policy or custom is premised on a failure to train, the municipality's failure to train its employees must rise to the level of deliberate indifference. See Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993).

> Deliberate indifference occurs where conscious disregard is displayed for the consequences of actions, not just simple or even heightened negligence. To prove deliberate indifference, a plaintiff must demonstrate that: (1) a policymaker knows to a moral certainty that his or her employees will confront a given situation; (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) the wrong choice by the municipality employee will frequently cause the deprivation of a citizen's constitutional rights.

Knicrumah v. Albany City Sch. Dist., 241 F. Supp. 2d 199, 207 (N.D.N.Y. 2003) (internal quotations omitted) (citing Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992)); see also Young v. Cnty. of Fulton, 160 F.3d 899, 903-04 (2d Cir. 1998).  To succeed on a Monell claim, a plaintiff must ultimately show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  Outlaw v. City of Hartford, 884 F.3d 351, 373 (2d Cir. 2018) (quoting City of Canton, 489 U.S. at 385).

In assessing a motion to dismiss a Monell claim, "[i]t is well settled that a plaintiff's conclusory allegations, which merely recite the elements of a Monell claim, are insufficient to state a claim for municipal liability."  Bryant v. Ciminelli, 6:16-CV-06766 EAW, 2017 WL 3188988, at *3 (W.D.N.Y. July 26, 2017) (citing cases); Weaver v. City of New York, No. 13-cv-20 (CBA)(SMG), 2014 WL 950041, at *7 (E.D.N.Y. Mar. 11, 2014) ("[V]ague and conclusory assertions are not sufficient to state a claim of municipal liability under Monell.")  A plaintiff must allege facts tending to support, at least circumstantially, an inference that the alleged municipal policy or custom exists.  Dwares, 985 F.2d at 100.

Here, Metzler includes no allegations concerning municipal liability.  She alleges only that the District "unilaterally told [her] that her accommodation request would no longer be accommodated."  Complaint, ¶¶ 17, 50.  Nowhere does Metzler identify an

official policy or custom that caused the denial of her constitutional rights.  See Zahra, 48 F.3d at 685.  Consequently, to the extent Metzler intended to assert a Monell claim, that claim is dismissed for failure to state a claim upon which relief can be granted.  See Costello v. City of Burlington, 632 F.3d 41, 49 (2d Cir. 2011) (dismissing Monell claims on the basis that the plaintiff failed to allege facts sufficient to show that a municipal policy or custom caused the alleged constitutional violations); Bryant, 2017 WL 3188988, at *4 (dismissing Monell claim because the plaintiff failed to allege facts concerning a municipal policy or custom); Houghton v. Cardone, 295 F. Supp. 2d 268, 278 (W.D.N.Y. 2003) (dismissing Monell claim on the basis that the complaint "contain[ed] only the most conclusory allegations" without "a single fact [] alleged in support of those allegations").

## E.   Leave to Amend

Metzler has not requested leave to amend her complaint.  It is, however, the usual practice to allow leave to replead upon granting a motion to dismiss.  Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."); Fed. R. Civ. P. 15 (a)(2) ("The court should freely give leave [to amend] when justice so requires.").  And while a district court does not abuse its discretion by denying leave to replead in the absence of such a request, see Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011), "leave to amend should be freely given unless there is 'any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of

amendment, etc.,'" see Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc., 970 F.3d 133, 148 n.4 (2d Cir. 2020)  (quoting Foman v. Davis, 371 U.S. 178, 182-83, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962)).

This Court cannot conclude at this time that the deficiencies in Metzler's ADA failure-to-accommodate and Fourteenth Amendment due process claims cannot be cured by further pleading or would necessarily be futile.  Leave to replead those claims is therefore granted.   Metzler's ADA retaliation claim based on pre-Charge acts is substantively deficient, however, and she has abandoned her state-law claims.  Leave to replead those claims is therefore denied.

## IV.    CONCLUSION

For the reasons stated above, this Court finds that the District's motion to dismiss must be granted in part and denied in part.  Metzler has sufficiently pleaded an ADA retaliation claim, but she has failed to state ADA failure-to-accommodate or Fourteenth Amendment due process claims and has abandoned her state-law claims.  Metzler is granted leave to replead as explained above.

## V.    ORDERS

IT HEREBY IS ORDERED, that the District's motion to dismiss (Docket No. 6) is GRANTED IN PART and DENIED IN PART, consistent with the foregoing decision.

FURTHER, that Metzler is afforded leave to replead through the filing of an amended complaint within 14 days of the entry date of this decision.

FURTHER, that the District must answer the complaint or respond to the amended complaint, if filed, within 28 days of the entry date of this decision.

SO ORDERED.


Dated:      July 31, 2024
            Buffalo, New York


                                    s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    United States District Judge